United States District Court
For the District of South Carolina
Beaufort Division

SARA B. GLASS,

Plaintiff,

v.

ROCKWELL COLLINS, INC.; and
LOCKHEED MARTIN CORP.; and,
RFD BEAUFORT, INC.; and, LEE
TINCHER; and, BRIAN GREALISH;

Defendants.

Civil Action No. 9:17-cv-02380-
PMD-MGB

PLAINTIFF'S LOCAL RULE
26.03 DISCLOSURES

Now comes Sara B. Glass, and files her required disclosures pursuant to Local

Civil Rule 26.03.

### (1) A short statement of the facts of the case.

Plaintiff Sara Glass was previously employed by Defendant Rockwell Collins, Inc.

as a Customer Support Specialist at the Beaufort Pilot Fit Facility.  Plaintiff began

working for Defendant Rockwell Collins, Inc. in October 2014, and remained so

employed until the time of her involuntary termination by Rockwell in December

2015.  Defendant Lockheed was the employer of Defendant Lee Tincher, and

Tincher acted with supervisory authority over the six employees at the Beaufort

Pilot Fit Facility.  Defendant RFD was the employer of Defendant Brian Grealish,

another member of the Beaufort Pilot Fit Facility.  Plaintiff was hired by Defendant

Rockwell in October 2014 to work at the Beaufort Pilot Fit Facility, where a team

was created of six full time employees to fit active duty pilots with necessary

equipment for flying F-35 aircraft.  Included on Plaintiff's team of six persons at

this facility were two employees of Rockwell, and two employees of Lockheed, and two employees of RFD.  Plaintiff was the only female on this team, and she worked in an environment that was dominated by males.  The facility manager at this location was Defendant Lee Tincher, and all team members deferred to Tincher and viewed him as the supervisory member of the Beaufort Pilot Fit Facility.  Through most of her tenure at this employment position, Plaintiff received favorable comments and reviews from her team members and the facility manager about her work performance.  Beginning at a point in time near the end of July 2015, things started to change, and Plaintiff was subjected to sex discrimination, vulgarities, threats of death and physical harm, and a hostile work environment, all perpetrated by and known by the Defendants herein.  Plaintiff first experienced a hostile work environment and sex discrimination in late July 2015, when Defendant Grealish, while employed by Defendant RFD, called Plaintiff a "cunt" in the workplace.  Plaintiff complained about this offensive behavior and demanded that it not be repeated.  Defendant Tincher, while employed by Defendant RFD, witnessed this offensive remark directed toward Plaintiff and failed to take corrective action, instead choosing to snicker and walk away.  Then in August 2015, Defendant Grealish was in Plaintiff's office and retrieved a cookie from her desk drawer, and he rubbed the cookie across his crotch area and threw the cookie at Plaintiff causing it to strike her in the head, and he screamed at Plaintiff "Fuck you, you Cunt!" and then kicked Plaintiff's full trash can across the room and left the room.  Plaintiff did nothing to invite, provoke, or deserve these offensive remarks and behaviors directed toward her

in the work place by Grealish.  Defendant Grealish engaged in these lewd, hostile, offensive, and threatening behaviors directed toward Plaintiff while he was employed by Defendant RFD at the Beaufort Pilot Fit Facility, and he did so in Plaintiff's work place while in the presence of others who were employed by Defendants Rockwell and Lockheed.  Following this second incident of being called a "cunt" by Defendant Grealish, Plaintiff complained to the facility manager, Defendant Tincher.  At the time that Plaintiff complained to Defendant Tincher in August 2015, she believed she was engaging in an appropriate protected activity by reporting misconduct and hostilities in the work place to a supervisor.  At the time that Plaintiff complained to Defendant Tincher in August 2015, she explained in no uncertain terms that she objected to being called a "cunt" by Mr. Grealish, and that she found such conduct to be offensive, hostile, and discriminatory based upon her sex as a female. At the time that Plaintiff complained to Defendant Tincher in August 2015, Plaintiff was given assurances by Tincher, that he was taking corrective action so that the matter did not need to be reported to anyone else. The assurances given by Defendant Tincher to Plaintiff that corrective action was being taken turned out to be false and misleading, even though Plaintiff relied upon the truth of same.  From the point where Plaintiff complained to her superiors in August 2015 that she felt discriminated against and subjected to a hostile work environment, stemming from being called a "cunt" in the work place multiple times in front of others, she was never treated the same in the work place.  From the point where Plaintiff complained to her superiors in August 2015 that she felt discriminated against and subjected to a hostile work

environment, the hostile and discriminatory conduct she was subjected to continued and worsened. During this time, the Defendants Tincher and Grealish would play video games and watch movies in their office to the exclusion of Plaintiff. During this time, Defendant Grealish would mock Plaintiff and roll his eyes anytime she would speak to someone in the same room with him. During this time, Defendant Grealish would say to Plaintiff in the work place "See you next Tuesday" which is an acronym for the offensive word she had already complained of being called by Grealish. During this time, Defendant Grealish put Plaintiff in fear for her life and her personal safety and threatened her with imminent bodily harm. During this time, Defendant Grealish asked another employee at the facility to bring his personal handgun to work along with some ammunition so that he could do some target practice, and Defendant Grealish made these remarks while looking directly at Plaintiff in a threatening and frightening manner. During this time, Defendant Grealish repeatedly reminded Plaintiff in the presence of others that he wanted another employee to bring his handgun to work because he had bullets with Plaintiff's name on them. All the while these events are occurring, Plaintiff is relying on the facility manager, Defendant Tincher, to take corrective action as he had pledged to do, but such never occurred. Plaintiff felt humiliated, threatened, offended, discriminated against, and was ultimately subjected to extreme emotional distress while in the work place at the hands of each and all of the Defendants herein. In November 2015, Plaintiff's supervisor at Rockwell, Daniel Kalsow, made a visit from his office in Iowa to the facility in Beaufort where Plaintiff worked. During this visit in

November 2015, Plaintiff expressed to Kalsow her ongoing concerns of sex discrimination, assault, hostile work environment, and unsatisfactory behaviors to which she was being subjected in the work place.  In response to Plaintiff's complaints to Kalsow, he initially criticized Plaintiff for not telling him of this sooner.  Then Kalsow pledged to investigate and take corrective action for the protection of Plaintiff's safety given the repeated instances of threats of gun violence made against Plaintiff by Grealish.  The complaints made by Plaintiff to Kalsow were a protected activity for which Defendant Rockwell could not retaliate against Plaintiff.  After Plaintiff made her complaints known to Kalsow, he pledged to take appropriate corrective action as to Grealish and his superiors, but this too turned out to be a false promise.  After Plaintiff made her complaints of sex discrimination, hostile work environment, and threats of gun violence against her by Grealish known to Kalsow, Grealish was suspended by his employer or someone acting on their behalf while the matter was investigated further.  On Friday November 20, 2015, Kalsow sent a text message to Plaintiff advising her that Mr. Grealish will be back to work on Monday, with no explanation of why this return to work was permissible or deemed appropriate.  When Mr. Grealish returned to work at the facility after apparently receiving no punishment whatsoever, Plaintiff continued to experience fear for her life and extreme emotional distress while at work.  Plaintiff attempted to contact Kalsow several times to learn more information and also to express her extraordinary fears of being in the work place with Grealish, but none of her phone calls or messages were ever responded to by Kalsow nor any of the Defendants.  On December 4,

2015, Plaintiff had a nervous breakdown or emotional distress episode at work due to her continuing fears in the work place.  When Plaintiff attempted to contact Kalsow about her continuing fears and emotional harm suffered, he simply replied by text stating "what now".  Later that same evening Kalsow ordered Plaintiff to book a flight to Rockwell home office in Iowa and be present in his office Monday morning December 7, 2015.  Upon arrival at this meeting at Rockwell home office, Plaintiff was presented with a "Performance Recovery Plan" by Kalsow and others in the room all of whom were acting in behalf of Defendant Rockwell.  This "Performance Recovery Plan" drafted by Defendant Rockwell was replete with inaccuracies, fabrications, exaggeration, and unfair criticisms of Plaintiff that were false and pretextual.  This "Performance Recovery Plan" drafted by Defendant Rockwell was discriminatory against Plaintiff upon information and belief insofar her male counterparts in the same work facility had committed similar performance deficiencies as were accused to Plaintiff without being subjected to any similar penalties, discipline, or performance recovery plan. This "Performance Recovery Plan" drafted by Defendant Rockwell was presented to Plaintiff in direct retaliation by her employer by reason of Plaintiff making protected complaints of sex discrimination, hostile work environment, and threats of violence against her in the workplace.  Plaintiff refused to sign the "Performance Recovery Plan" presented to her by Defendant Rockwell, and explained her refusal was due to her belief that it was fabricated and retaliatory. At that point, multiple senior executives within Defendant Rockwell's organization cautioned Plaintiff and expressed to her that they were not going to allow her to

jeopardize their $4.7 Million Dollar contract with Lockheed Martin, and as a result, she was going to have to tolerate the work place environment to which she had been subjected and learn how to keep the members there from RFD and Lockheed happy. Also during this meeting with Kalsow and others at Rockwell to discuss this new "Performance Recovery Plan," Kalsow informed Plaintiff that the facility manager employed by Lockheed was changing her work hours such that she would be required to arrive at work earlier at 7:30 am each morning. At all times Plaintiff was employed by Rockwell at the Beaufort Pilot Fit Facility, it was known and expressly agreed upon that Plaintiff's start time at work could be no sooner than 8:00 am so that Plaintiff's children could have safe transportation to school. This was a material term of Plaintiff's employment by Rockwell that was known by all and expressly agreed upon at this facility. This new work start time was directed toward Plaintiff in direct retaliation by her employer by reason of Plaintiff making protected complaints of sex discrimination, hostile work environment, and threats of violence against her in the work place. This new work start time upon information and belief was the product of a civil conspiracy engaged in by each and all of the Defendants herein who wanted to figure out a way to force Plaintiff to resign her position and leave this facility. Plaintiff then expressed to Kalsow that she refused to resign her position, that she was proud of and enjoyed her work at this facility, and that she wished to remain in her current position with the same work hours as previously set forth. Then, other executives within Rockwell's organization attempted to coerce Plaintiff into resigning her position of employment. Plaintiff refused to accept Rockwell's

invitation for her resignation and then asked for a period of personal leave to gather her thoughts, which was approved by Rockwell. Rockwell, through Kalsow, then on December 13, 2015 advised Plaintiff that she would be required to work from home for the dates December 14-16, 2015 via text message. Rockwell terminated Plaintiff from employment on December 15, 2015. Rockwell's termination of Plaintiff from her position of employment was in contravention of promises made to her by Tincher, Kalsow, and others that they were going to correct the hostile, offensive, and discriminatory work environment to which Plaintiff had been subjected while working for Rockwell at the Beaufort Pilot Fit Facility. Rockwell's termination of Plaintiff was in direct retaliation of Plaintiff by reason of her having made protected complaints of sex discrimination, hostile work environment, and threats of violence against her in the work place. Rockwell's termination of Plaintiff was resultant from a civil conspiracy engaged in by each and all of the Defendants herein. Rockwell's termination of Plaintiff was without just cause. Rockwell's termination of Plaintiff was against and in violation of the public policy of the State of South Carolina. Rockwell's termination of Plaintiff was discriminatory against Plaintiff because of her sex as a female.

**(2) The names of fact witnesses likely to be called by the party and a brief summary of their expected testimony.**

- **Sara Glass:** Plaintiff can testify as to her employment history with Defendant Rockwell Collins and about the facts and sequences of events that serve as basis for her Complaint.

- **Daniel Glass:** This is Plaintiff's spouse who can corroborate much of the information regarding Plaintiff's history of employment at PFF, the material terms under which she accepted this employment to include a morning start time that would fit with their family needs to get their children to school safely each morning prior to starting work, and also the adverse consequences suffered by Plaintiff due to her treatment in the work place, and also the loss of income and benefits she experienced due to termination from employment.

- **Brian Grealish**: Defendant Grealish can testify as to his relationship with Plaintiff throughout their time working together, his history with and conduct toward Plaintiff, his inappropriate threats, vulgarities, and discriminatory remarks directed toward Plaintiff, and the facts and sequences leading up to Plaintiff's termination from employment.

- **Travis Roman**: Former Survitec employee who can testify as to group dynamics at PFF, and also can corroborate the hostile and discriminatory environment that Plaintiff experienced at PFF.

- **Lee Tincher**: Defendant Tincher was the on the ground leader of the PFF team on behalf of Defendant Lockheed-Martin. He can testify to his role on the team, the group dynamics, the complaints of threats, hostilities, and discrimination raised by Plaintiff, the actions he took in response, and the sequence of events leading up to Plaintiff's termination from employment.

- **Mike Cassaza**: Mr. Cassaza can testify to key incidents mentioned in Plaintiff's Complaint and can testify as to group dynamics; he can also can

corroborate the hostile and discriminatory environment that Plaintiff experienced at PFF.

- **Dustin Vagedes**: Mr. Vagedes can testify to key incidents mentioned in Plaintiff's Complaint and can testify as to group dynamics; he can also can corroborate the hostile and discriminatory environment that Plaintiff experienced at PFF.

- **Randy Epperly:** As Defendant Grealish's direct supervisor from Florida, Mr. Epperly can testify as to the extent and timing of Survitech's knowledge regarding any complaints against Defendant Grealish as well as Survitech's actions in response to same.

- **Daniel Kalsow**: As Plaintiff's supervisor with Rockwell, Mr. Kalsow can testify as to his own in person meetings with Plaintiff, and also the complaints of workplace discrimination, threats of violence, and hostilities made by Plaintiff, and the retaliatory actions made against Plaintiff in response to those complaints, and also the sequence of events leading up to Plaintiff's termination from employment.

- **Julie Jones**: This individual was a human resources executive with Rockwell Collins who can testify about the Performance Recovery Plan that was presented to Plaintiff after her complaints about workplace discrimination and hostilities, and she can also testify about the efforts made by the defending parties to force Plaintiff's resignation.

- **30(b)(6)**:    Upon information and belief, each of the corporate defendants herein may present witnesses to testify on behalf of the

-10-

corporate defendants about policies and procedures in place within their organizations, as well as any information they have relating to the complaints raised by Plaintiff.

Plaintiff reserves the right to amend and supplement this list of witnesses as discovery proceeds in this case.

**(3) The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field of expertise should be give as to experts likely to be offered).**

Plaintiff anticipates naming expert witnesses in accordance with the deadlines set forth in the Amended Conference and Scheduling Order.  At present, it is anticipated that an economic expert may be named to provide present day value calculations and testimony regarding the value of lost income and benefits suffered by Plaintiff due to her termination from employment, and also, it is likely that a medical expert from the Department of Veterans Affairs hospital will be called upon to corroborate Plaintiff's anxiety and extreme emotional distress suffered in the work place and the medical interventions or treatments undertaken to address same.

**(4)     A summary of the claims or defenses with statutory and/or case citations supporting the same.**

As to Plaintiff's claims for unlawful harassment, sex discrimination, hostile work environment, and retaliatory discharge, Plaintiff craves reference to Title VII of the Civil Rights Act, and 42 U.S.C. § 2000e, and S.C. Code Ann.  § 1-13-80, and *Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405,

-11-

165 L.Ed.2d 345 (2006), and *White v. BFI Waste Servs., LLC,* 375 F.3d 288 (4th Cir. 2004).

As to Plaintiff's claims for wrongful discharge in violation of public policy, Plaintiff craves reference to *Ludwick v. This Minute of Carolina, Inc.,* 287 S.C. 219, 337 S.E.2d 213 (1985); *Probst v. Bitzer*, 39 F.3d 148, 154 (7th Cir. 1994); *Garner v. Morrison Knudsen Corp.,* 318 S.C. 223, 456 S.E.2d 907 (1995).

As to Plaintiff's claims for intentional infliction of emotional distress, Plaintiff craves reference to *Todd v. South Carolina Farm Bureau Mutual Ins. Co.,* 283 S.C. 155, 321 S.E.2d 602 (Ct. App. 1984), and *Bass v. S.C. Dep't of Soc. Servs.,* 414 S.C. 558, 780 S.E.2d 252 (2015).

As to Plaintiff's claims for civil conspiracy, Plaintiff craves reference to *Hackworth v. Greywood at Hammett, LLC*, 385 S.C. 110, 682 S.E.2d 871 (Ct. App. 2009), and *LaMotte v. Punchline of Columbia, Inc.,* 296 S.C. 66, 370 S.E.2d 711 (1988).

As to Plaintiff's claims for assault, Plaintiff craves reference to *Gathers v. Harris-Teeter Supermarket*, 282 S.C. 220, 317 S.E.2d 748 (Ct. App. 1984).

As to Plaintiff's claims for negligent misrepresentation, Plaintiff craves reference to *Quail Hill, LLC v. Cty. of Richland*, 387 S.C. 223, 692 S.E.2d 499 (2010).

**(5)    Absent special instructions from the assigned judge, proposed dates for the following deadlines listed in Local Civ Rule 16.02 (D.S.C.) (a) Exchange of Fed. R Civ. P.26 (a)(2) expert disclosures. (b) Completion of discovery.#**

Plaintiff craves reference to the Amended Conference and Scheduling Order (DKT 34) indicating deadlines of July 13, 2018 for Plaintiff and

August 13, 2018 for Defendants.

**(6)     Any special circumstances that would affect the time frames applied in preparing the scheduling order. See generally Local Civ. Rule 16.02(C)(D.S.C.) (Content of Scheduling Order).**

There may be a concern by Plaintiff at present relating to obtaining all necessary salary and benefits information from the defending parties timely in order to have an economic expert analyze same and prepare a report consistent with the current expert deadlines, and also acquiring the medical records of Plaintiff from the Department of Veterans Affairs hospital to obtain medical information relating to treatment she undertook following the events described in her Complaint.  There is also a concern by Plaintiff regarding the defending parties' desire to take Plaintiff's deposition for a period in excess of a single day or seven hours, which was raised by defense counsel during the Rule 26(f) discovery conference. Pursuant to Rule 30(d)(1), FRCP, Plaintiff objects to her deposition being taken for more than seven hours or for more than a single day.

**(7)     Any additional information requested in the Pre-Scheduling Order (Local Civ. Rule 16.01(D.S.C.)) or otherwise requested by the assigned judge.**

Not applicable.

[SIGNATURES CONTINUED ON THE FOLLOWING PAGE]

/S/ Patrick W. Carr_____

Patrick W. Carr, Esquire

SC Bar No. 15585; Fed. I.D. No. 07190

BERRY & CARR, P.C.

Attorneys at Law

2 Spanish Wells Road

Hilton Head Island, SC 29926

Phone: (843) 686-5432

May 30, 2018.                                Facsimile: (843) 785-6173

E-mail: patrick@hiltonheadlawyers.com

Hilton Head Island, South Carolina    *Attorneys for Plaintiff*

-14-