United States District Court
For the District of South Carolina
Beaufort Division

| | |
|---|---|
| **SARA B. GLASS,**<br><br><br>*Plaintiff,*<br>**v.**<br><br>**ROCKWELL COLLINS, INC.; and LOCKHEED MARTIN CORP.; and, RFD BEAUFORT, INC.; and, LEE TINCHER; and, BRIAN GREALISH;**<br><br>*Defendants.* | **Civil Action No. 9:17-cv-02380-PMD-MGB**<br><br>**SECOND AMENDED COMPLAINT** |

The Plaintiff Sara B. Glass, complaining of the Defendants herein, submits her Second Amended Complaint in this action and would respectfully allege as follows:

## PARTIES, JURISDICTION, FACTUAL BACKGROUND

1.   The Plaintiff, Sara B. Glass (hereafter "Plaintiff" or "Sara"), is an individual citizen and resident of Beaufort County, South Carolina.  At the time of the events complained of herein, Plaintiff was at all times employed by Defendant Rockwell Collins, Inc. as a Customer Support Specialist at the Beaufort Pilot Fit Facility.

2.   Plaintiff began working for Defendant Rockwell Collins, Inc. in October 2014, and remained so employed until the time of her involuntary termination by Rockwell in December 2015.

3.   Defendant Rockwell Collins, Inc. (hereafter "Rockwell") is upon information and belief a foreign corporate entity that is registered pursuant to the laws of the State of Delaware and that maintains its home office or principal place of business at 400 Collins Road NE, Cedar Rapids, Iowa 52498.

1

4.      At the time of the events described herein, Defendant Rockwell was Plaintiff's employer, and Defendant Rockwell transacts business, maintains agents and employees, and has otherwise purposely availed itself to the jurisdiction of the State of South Carolina, including particularly Beaufort County, South Carolina.

5.      Defendant Lockheed Martin Corp. (hereafter "Lockheed") is upon information and belief a foreign corporate entity that maintains its home office or principal place of business at 6801 Rockledge Drive, Bethesda, Maryland 20817.

6.      At the time of the events described herein, Defendant Lockheed was the employer of Defendant Lee Tincher, and Defendant Lockheed transacts business, maintains agents and employees, and has otherwise purposely availed itself to the jurisdiction of the State of South Carolina, including particularly Beaufort County, South Carolina.

7.      Defendant RFD Beaufort, Inc. (hereafter "RFD") is upon information and belief a foreign corporate entity that maintains its home office or principal place of business at 1420 Wolf Trail, Sharon Center, OH 44274.

8.      At the time of the events described herein, Defendant RFD was the employer of Defendant Brian Grealish, and Defendant RFD transacts business, maintains agents and employees, and has otherwise purposely availed itself to the jurisdiction of the State of South Carolina, including particularly Beaufort County, South Carolina.

9.      Each and all of the corporate Defendants herein, Rockwell, Lockheed, and RFD are large corporate entities with more than 100 employees.

10.     Each and all of these corporate Defendants enjoy substantial wealth and profits from their business activities, including particularly within Beaufort County, South Carolina.

11.     Upon information and belief, Defendant Lee Tincher (hereafter "Tincher") is a citizen and resident of Beaufort County, South Carolina.

12.     Defendant Tincher was at all times herein an agent and employee of Defendant Lockheed and was acting in the course and scope of his employment with Defendant Lockheed.  Defendant Tincher is being sued both in his individual capacity for tortious conduct committed within Beaufort County, South Carolina, and in his representative capacity as an agent and employee of Defendant Lockheed.

13.     Upon information and belief, Defendant Brian Grealish is a citizen and resident of Beaufort County, South Carolina.

14.     Defendant Grealish was at all times herein an agent and employee of Defendant RFD and was acting in the course and scope of his employment with Defendant RFD.  Defendant Grealish is being sued both in his individual capacity for tortious conduct committed within Beaufort County, South Carolina, and in his representative capacity as an agent and employee of Defendant RFD.

15.     Each and all of the corporate Defendants herein are responsible for the tortious conduct and omissions committed by their agents and employees during the course and scope of their employment, pursuant to the legal principle of respondeat superior and all other applicable law.

16. Plaintiff was hired by Defendant Rockwell in October 2014 to work at the Beaufort Pilot Fit Facility, where a team was created of six full time employees to fit active duty pilots with necessary equipment for flying F-35 aircraft.

17. Included on Plaintiff's team of six persons at this facility were two employees of Rockwell, and two employees of Lockheed, and two employees of RFD, all of which was known to all Defendants at all times herein.

18. Plaintiff was the only female on this team, and she worked in an environment that was dominated by males.

19. The facility manager at this location was Defendant Lee Tincher, and all team members deferred to Tincher and viewed him as the supervisory member of the Beaufort Pilot Fit Facility.

20. Through most of her tenure at this employment position, Plaintiff received favorable comments and reviews from her team members and the facility manager about her diligent work and good job performance.

21. Beginning at a point in time near the end of July 2015, things started to change, and Plaintiff was subjected to sex discrimination, vulgarities, threats of death and physical harm, and a hostile work environment, all perpetrated by and known by the Defendants herein.

22. Plaintiff first experienced a hostile work environment and sex discrimination in late July 2015, when Defendant Grealish, while employed by Defendant RFD, called Plaintiff a "cunt" in the workplace.

23. Plaintiff immediately complained about this offensive behavior and demanded that it not be repeated, both to Defendant Grealish and Defendant Tincher.

24. Defendant Tincher, while employed by Defendant RFD, witnessed this offensive remark directed toward Plaintiff and failed to take corrective action, instead choosing to snicker and walk away.

25. Then in August 2015, Defendant Grealish was in Plaintiff's office and retrieved a cookie from her desk drawer, and he rubbed the cookie across his crotch area and threw the cookie at Plaintiff causing it to strike her in the head, and he screamed at Plaintiff "Fuck you, you Cunt!" and then kicked Plaintiff's full trash can across the room and left the room.

26. Plaintiff did nothing to invite, provoke, or deserve these offensive remarks and behaviors directed toward her in the work place by Grealish.

27. Defendant Grealish engaged in these lewd, hostile, offensive, and threatening behaviors directed toward Plaintiff while he was employed by Defendant RFD at the Beaufort Pilot Fit Facility, and he did so in Plaintiff's work place while in the presence of others who were employed by Defendants Rockwell and Lockheed.

28. Following this second incident of being called a "cunt" by Defendant Grealish, which was viewed by Plaintiff as sexually hostile, discriminatory, rude, threatening, vulgar, and assaultive, Plaintiff again complained to the facility manager, Defendant Tincher.

29. At the time that Plaintiff complained to Defendant Tincher in August 2015, she believed she was engaging in an appropriate protected activity by reporting misconduct and hostilities in the work place to a supervisor.

30. At the time that Plaintiff complained to Defendant Tincher in August 2015, she explained in no uncertain terms that she objected to being called a "cunt" by Mr.

Grealish, and that she found such conduct to be offensive, hostile, and discriminatory based upon her sex as a female.

31.   At the time that Plaintiff complained to Defendant Tincher in August 2015, and during multiple subsequent encounters between Plaintiff and Defendant Tincher, Plaintiff was repeatedly given assurances and representations by Tincher that he was actively taking corrective action to end this harmful conduct and protect Plaintiff from same in the work place, such that Plaintiff believed that the matter did not need to be reported to anyone else.

32.   The assurances and representations given by Defendant Tincher to Plaintiff that corrective action was actively being taken turned out to be false and misleading, even though Plaintiff relied upon the truth of same.

33.   From the point where Plaintiff complained to her superiors in August 2015 that she felt discriminated against and subjected to a hostile work environment, stemming from being called a "cunt" in the work place multiple times in front of others, she was never treated the same in the work place.

34.   From the point where Plaintiff complained to her superiors in August 2015 that she felt discriminated against and subjected to a hostile work environment, the hostile and discriminatory conduct she was subjected to continued and worsened.

35.   During this time, the Defendants Tincher and Grealish would play video games and watch movies in their office to the exclusion of Plaintiff.

36.   During this time, Defendant Grealish would mock Plaintiff and roll his eyes anytime she would speak to someone in the same room with him.

37. During this time, Defendant Grealish would say to Plaintiff in the work place "See you next Tuesday" which is an acronym for the offensive word she had already complained of being called by Grealish.

38. During this time, Defendant Grealish put Plaintiff in fear for her life and her personal safety and threatened her with imminent bodily harm.

39. During this time, Defendant Grealish asked another employee at the facility to bring his personal handgun to work along with some ammunition so that he could do some target practice, and Defendant Grealish made these remarks while looking directly at Plaintiff in a threatening and frightening manner.

40. During this time, Defendant Grealish repeatedly reminded Plaintiff in the presence of others that he wanted another employee to bring his handgun to work because he had bullets with Plaintiff's name on them.

41. All the while these events are occurring, Plaintiff is relying on the facility manager, Defendant Tincher, to take corrective action as he had pledged to do, but such never occurred.

42. Plaintiff felt humiliated, threatened, offended, discriminated against, and was ultimately subjected to extreme emotional distress while in the work place at the hands of each and all of the Defendants herein.

43. In November 2015, Plaintiff's supervisor at Rockwell, Daniel Kalsow, made a visit from his office in Iowa to the facility in Beaufort where Plaintiff worked.

44. During this visit in November 2015, Plaintiff expressed to Kalsow her ongoing concerns of sex discrimination, assault, hostile work environment, and unsatisfactory behaviors to which she was being subjected in the work place.

45. In response to Plaintiff's complaints to Kalsow, he initially criticized Plaintiff for not telling him of this sooner.

46. Then Kalsow pledged to investigate and take corrective action for the protection of Plaintiff's safety given the repeated instances of threats of gun violence made against Plaintiff by Grealish.

47. The complaints made by Plaintiff to Kalsow were a protected activity for which Defendant Rockwell could not retaliate against Plaintiff.

48. After Plaintiff made her complaints known to Kalsow, he pledged to take appropriate corrective action as to Grealish and his superiors, but this too turned out to be a false promise.

49. After Plaintiff made her complaints of sex discrimination, hostile work environment, and threats of gun violence against her by Grealish known to Kalsow, Grealish was suspended by his employer or someone acting on their behalf while the matter was investigated further.

50. On Friday November 20, 2015, Kalsow sent a text message to Plaintiff advising her that Mr. Grealish will be back to work on Monday, with no explanation of why this return to work was permissible or deemed appropriate.

51. When Mr. Grealish returned to work at the facility after apparently receiving no punishment whatsoever, Plaintiff continued to experience fear for her life and extreme emotional distress while at work.

52. Plaintiff attempted to contact Kaslow several times to learn more information and also to express her extraordinary fears of being in the work place with Grealish,

but none of her phone calls or messages were ever responded to by Kaslow nor any of the Defendants.

53.    On December 4, 2015, Plaintiff had a nervous breakdown or emotional distress episode at work due to her continuing fears in the work place.

54.    When Plaintiff attempted to contact Kaslow about her continuing fears and emotional harm suffered, he simply replied by text stating "what now".

55.    Later that same evening Kaslow ordered Plaintiff to book a flight to Rockwell home office in Iowa and be present in his office Monday morning December 7, 2015.

56.    Upon arrival at this meeting at Rockwell home office, Plaintiff was presented with a "Performance Recovery Plan" by Kaslow and others in the room all of whom were acting in behalf of Defendant Rockwell.

57.    This "Performance Recovery Plan" drafted by Defendant Rockwell was replete with inaccuracies, fabrications, exaggeration, and unfair criticisms of Plaintiff that were false and pretextual.

58.    This "Performance Recovery Plan" drafted by Defendant Rockwell was discriminatory against Plaintiff upon information and belief insofar her male counterparts in the same work facility had committed similar performance deficiencies as were accused to Plaintiff without being subjected to any similar penalties, discipline, or performance recovery plan.

59.    This "Performance Recovery Plan" drafted by Defendant Rockwell was presented to Plaintiff in direct retaliation by her employer by reason of Plaintiff making protected complaints of sex discrimination, hostile work environment, and threats of violence against her in the workplace.

60. Plaintiff refused to sign the "Performance Recovery Plan" presented to her by Defendant Rockwell, and explained her refusal was due to her belief that it was fabricated and retaliatory.

61. At that point, multiple senior executives within Defendant Rockwell's organization cautioned Plaintiff and expressed to her that they were not going to allow her to jeopardize their $4.7 Million Dollar contract with Lockheed Martin, and as a result, she was going to have to tolerate the work place environment to which she had been subjected and learn how to keep the members there from RFD and Lockheed happy.

62. Also during this meeting with Kaslow and others at Rockwell to discuss this new "Performance Recovery Plan," Kaslow informed Plaintiff that the facility manager employed by Lockheed was changing her work hours such that she would be required to arrive at work earlier at 7:30 am each morning.

63. At all times Plaintiff was employed by Rockwell at the Beaufort Pilot Fit Facility, it was known and expressly agreed upon that Plaintiff's start time at work could be no sooner than 8:00 am so that Plaintiff's children could have safe transportation to school.  This was a material term of Plaintiff's employment by Rockwell that was known by all and expressly agreed upon at this facility.

64. This new work start time was directed toward Plaintiff in direct retaliation by her employer by reason of Plaintiff making protected complaints of sex discrimination, hostile work environment, and threats of violence against her in the work place.

65.  This new work start time upon information and belief was the product of a civil conspiracy engaged in by each and all of the Defendants herein who wanted to figure out a way to force Plaintiff to resign her position and leave this facility.

66.  Plaintiff then expressed to Kaslow that she refused to resign her position, that she was proud of and enjoyed her work at this facility, and that she wished to remain in her current position with the same work hours as previously set forth.

67.  Then, other executives within Rockwell's organization attempted to coerce Plaintiff into resigning her position of employment.

68.  Plaintiff refused to accept Rockwell's invitation for her resignation and then asked for a period of personal leave to gather her thoughts, which was approved by Rockwell.

69.  Rockwell, through Kaslow, then on December 13, 2015 advised Plaintiff that she would be required to work from home for the dates December 14-16, 2015 via text message.

70.  Rockwell terminated Plaintiff from employment on December 15, 2015.

71.  Rockwell's termination of Plaintiff from her position of employment was in contravention of promises made to her by Tincher, Kaslow, and others that they were going to correct the hostile, offensive, and discriminatory work environment to which Plaintiff had been subjected while working for Rockwell at the Beaufort Pilot Fit Facility.

72.  Rockwell's termination of Plaintiff was in direct retaliation of Plaintiff by reason of her having made protected complaints of sex discrimination, hostile work environment, and threats of violence against her in the work place.

73.    Rockwell's termination of Plaintiff was resultant from a civil conspiracy engaged in by each and all of the Defendants herein.

74.    Rockwell's termination of Plaintiff was without just cause.

75.    Rockwell's termination of Plaintiff was against and in violation of the public policy of the State of South Carolina.

76.    Rockwell's termination of Plaintiff was discriminatory against Plaintiff because of her sex as a female.

77.    Plaintiff initiated her federal employment related claims against Defendant Rockwell by the filing of an EEOC Intake Questionnaire dated April 6, 2016, and a formal charge of discrimination was signed and filed by Plaintiff through the EEOC once completed by the EEOC on October 24, 2016.

78.    Subsequent the issuance of her charge of discrimination, Plaintiff's charge was transferred by the EEOC to the South Carolina Human Affairs Commission for continued investigation and handling as of February 1, 2017, pursuant to EEOC Charge #415-2016-00565 and SHAC #1-17-72S/RET.

79.    Subsequent to the above, the State Human Affairs Commission issued to Plaintiff a Notice of Right to Sue letter on June 8, 2017.

80.    Subsequent to the above, the United States Equal Employment Opportunity Commission issued to Plaintiff a Notice of Right to Sue letter on July 27, 2017.

81.    Plaintiff has exhausted her administrative remedies applicable to her federal employment related claims, and she has met all necessary conditions precedent to filing this lawsuit, and this lawsuit is timely filed.

82.   This court has jurisdiction over all of the subject matter and the parties alleged and joined herein.

83.   All of the party Defendants set forth in this Complaint are correctly identified and joined in this action.

84.   The causes of action raised herein arise in part under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et. seq., and South Carolina state law.

85.   All of the allegations set forth above and below in this Complaint shall be restated and incorporated as to all parties and all causes of action raised herein.


**FOR A FIRST CAUSE OF ACTION**

**(Title VII – Unlawful harassment, discrimination, hostile environment, retaliation)**

**(Defendant Rockwell)**

86.   Defendant Rockwell is engaged in an industry affecting commerce and had more than 100 employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

87.   Plaintiff was at all times relevant herein an employee of Defendant Rockwell.

88.   Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against individuals with respect to the terms, conditions, or privileges of employment because of such individual's sex.

89.   Title VII evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment.

90.   An employee's work environment is a term or conditions of employment.

91.   An employee's work hours constitute a term or condition of employment.

92. A valid Title VII claim for unlawful sexual harassment in the work place is presented when a female Plaintiff demonstrates that there was offending conduct that was unwelcome, was based on her sex, was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment and was imputable to her employer.

93. It is offensive, vulgar, hostile, and unwelcome for a female to be called a "cunt" in the work place.

94. Sara was called this vulgar expletive multiple times in the work place, and she alone as the only female in this facility was subjected to such conduct.

95. It is offensive, vulgar, hostile, and unwelcome for a female to be threatened with gun violence in the work place.

96. Sara was subjected to being threatened with gun violence in the work place multiple times by a male counterpart who was persistently harassing her, and no others at this facility were subject to such threats and intimidation.

97. The conduct at this facility which Sara was subjected to was objectively and subjectively so severe and pervasive that it altered the conditions of her employment and created an abusive and hostile working environment.

98. The conduct at this facility which Sara was subjected to was permeated with discriminatory intimidation, ridicule, and insult, all of which was sexually motivated.

99. At the time of the events described herein, Sara was made to be a target for discrimination, humiliation, intimidation, ridicule, harassment, open hostility, and insult because she was subjected to being called sex specific insults such as "cunt" in an open manner and also threatened with gun violence.

100.  The purpose behind Title VII protections for women in the work place include the protection of women from the kind of male attentions that can make the workplace hellish for women.

101.  All of the harassment, discrimination, and hostilities suffered by Plaintiff in the work place as described herein are imputable to her employer, including particularly the conduct of Grealish and Tincher, by reason of Rockwell having actual knowledge of the conduct and failing to take any effective action to correct it, and also by reason of their contractual relationships with Defendants RFD and Lockheed.

102.  Despite notice and complaints by Plaintiff about Brian Grealish's conduct exacted toward her in the work place, Defendant Rockwell failed to take any action reasonably calculated to prevent sexual harassment or discrimination and permitted a work environment to exist that was sexually charged, hostile, violent, and offensive to Plaintiff.

103.  The Defendants' creation and condoning of a hostile and discriminatory work environment, and their failure to correct same, caused Plaintiff to suffer extreme emotional pain and suffering, mental anguish, loss of enjoyment of life, loss of income, and is further the type of malicious, reckless, and indifferent conduct worthy of the imposition of punitive damages against Defendants herein.

104.  Title VII also protects discrimination or retaliation against an employee because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge or complaint about unlawful or discriminatory behaviors in the work place.

105. When Sara raised her complaints of sex discrimination, hostile work environment, harassment, and threats of violence against her in the work place to her employment supervisor Kaslow at Rockwell, she was engaged in a protected activity in raising these complaints to her employer.

106. Defendant Rockwell retaliated against Plaintiff in response to her good faith complaints of improper and unwelcome work place hostilities directed toward her, by concocting a "Performance Recovery Plan", and by changing her work hours, and by refusing to correct the conduct of which she complained, and by ultimately terminating her employment.

107. Defendant Rockwell, through the condoning and participating in all of the events described herein, is liable to Plaintiff for civil legal remedies stemming from the unlawful harassment, sex discrimination, and retaliation directed toward Plaintiff.

108. As a direct and proximate result of the conduct to which she was subjected in the work place as described herein, Plaintiff has been harmed substantially, and Defendant Rockwell is liable to Plaintiff for actual damages, for punitive damages, for pre judgment interest, for post judgment interest, for the costs of this action, for attorney fees, and for such other and further relief as this Court deems appropriate.

## FOR A SECOND CAUSE OF ACTION

### (Wrongful Discharge)

### (Defendant Rockwell)

109. Under South Carolina law, there is a clear public policy in favor of encouraging female employees to raise good faith complaints of sexual harassment, sexual

discrimination, hostile work environment, and threats of criminal conduct or gun violence when such occurs in the work place.

110. Under South Carolina law, there is a clear public policy in favor of permitting female employees to raise good faith complaints of unwelcome sexually charged threats, hostilities, and vulgarities when such is experienced in the work place.

111. Female employees must be able to raise these complaints to their superiors and to their employers without fear of retribution or retaliation.

112. By the conduct and events described herein, Plaintiff was subjected to frequent intimidation, ridicule, harassment, threats, discrimination, and insults.

113. Plaintiff's initial complaints about this conduct and work environment fell on deaf ears when she first complained to the facility manager Tincher, so she then raised her complaints to her employer Rockwell.

114. Following her good faith reporting of unlawful conduct in the work place, Defendant Rockwell wrongfully discharged Plaintiff from employment in violation of public policy.

115. As a direct and proximate result of Plaintiff's wrongful discharge from employment in violation of public policy as described herein, Plaintiff has been harmed substantially, and Defendant Rockwell is liable to Plaintiff for actual damages, for punitive damages, for pre judgment interest, for post judgment interest, for the costs of this action, for attorney fees, and for such other and further relief as this Court deems appropriate.

## FOR A THIRD CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

### (Defendants Grealish and RFD)

116.  By their conduct described herein, both by the directing of sexual hostilities, offensive remarks, and threats of violence against Plaintiff herein, and/or by their condoning of such conduct and failing to take appropriate corrective action, Defendants Grealish and RFD herein have intentionally or recklessly inflicted severe emotional distress upon Plaintiff.

117.  The conduct described herein by Defendant Grealish, and by association and agency relationship his employer RFD, was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

118.  The actions Defendants Grealish and RFD herein as directed and carried out toward Plaintiff proximately caused Plaintiff to suffer severe emotional distress and mental anguish to a level so severe that no reasonable person could be expected to endure such.

119.  As a direct and proximate result of the intentional and reckless infliction of severe emotional distress upon Plaintiff as described herein, Plaintiff has been harmed substantially, and Defendants Grealish and RFD herein are liable to Plaintiff for actual damages, for punitive damages, for pre judgment interest, for post judgment interest, for the costs of this action, for attorney fees, and for such other and further relief as this Court deems appropriate.

**FOR A FOURTH CAUSE OF ACTION**

**(Civil Conspiracy)**

**(All Defendants)**

120.  Once Plaintiff raised her complaints and objections to the Defendants herein about misconduct and hostilities in the work place directed toward her, the Defendants herein engaged in a civil conspiracy against Plaintiff for the specific purpose of causing her harm and removing her from the work place.

121.  The Defendants herein, each and all of them, combined their efforts to discredit, intimidate, harass, and otherwise influence Plaintiff into either resigning her position of employment or terminating same.

122.  This unlawful civil conspiracy was engaged in by each and all of the Defendants herein for the purposes of protecting their male dominated team at the Beaufort Pilot Fit Facility, and also protecting their mutual contractual interests as corporate actors, and also ruin Plaintiff to the point where she could no longer work there.

123.  This civil conspiracy engaged in by each and all of the Defendants herein caused Plaintiff to suffer special harms and damages separate and apart from the loss of her job, loss of benefits, and the emotional harm she suffered in the work place.

124.  The special damages caused to Plaintiff herein that proximately resulted from the civil conspiracy engaged in between and among each and all Defendants include, but are not limited to, interruption of her normal schedule and family life to fly to Rockwell's home office in Iowa on short notice, cancellation of weekend plans with her family to accommodate the Defendants' immediate decision to fly Plaintiff to

19

her employer's home office the next business day, being placed on a Performance Recovery Plan as a means of retaliation and without justification from her employer, changes in her work schedule that the Defendants knew would create difficulties if not impossibilities for her, the worry and angst of having to pay for or arrange for alternate school transportation plans for her children due to an earlier work start time that was in contravention of what was promised to her, and other items of special harm that may be revealed by discovery and are separate from the loss of job, loss of benefits, and emotional harm caused to Plaintiff.

125.    As a direct and proximate result of the civil conspiracy exacted toward Plaintiff by the Defendants as described herein, Plaintiff has been harmed substantially, and each and all of the Defendants are jointly and severally liable to Plaintiff for actual damages, for punitive damages, for pre judgment interest, for post judgment interest, for the costs of this action, for attorney fees, and for such other and further relief as this Court deems appropriate.

### FOR A FIFTH CAUSE OF ACTION

### (Assualt)

### (Defendants Grealish and RFD)

126.    By his conduct in repeatedly threatening Plaintiff with gun violence, and by throwing objects at her and striking her with same while yelling profanities and vulgarities, Defendant Grealish placed Plaintiff in reasonable fear of bodily harm.

127.    At all times described herein, Defendant Grealish was acting in the course and scope of his employment with Defendant RFD.

128.    Defendant RFD is vicariously liable for the conduct of its agent and employee Brian Grealish as described herein.

129.    As a direct and proximate result of the assault directed toward Plaintiff by Defendants Grealish and RFD as described herein, Plaintiff has been harmed substantially, and Defendants Grealish and RFD are jointly and severally liable to Plaintiff for actual damages, for punitive damages, for pre judgment interest, for post judgment interest, for the costs of this action, for attorney fees, and for such other and further relief as this Court deems appropriate.

## FOR A SIXTH CAUSE OF ACTION

### (Negligent Misrepresentation)

### (Defendants Tincher and Lockheed)

130.    Once Plaintiff raised her complaints and objections to the Defendant Tincher, and by association and agency relationship Defendant Lockheed, about the misconduct and hostilities in the work place directed toward her, she was given assurances and representations by Tincher, and by association and agency relationship Defendant Lockheed, that corrective action was ongoing such that she would be protected in the work place and there was no need for Plaintiff to report her complaints to anyone else.

131.    On multiple occasions, Plaintiff reminded Defendant Tincher that Defendant Grealish was mistreating her with threats, hostilities, vulgarities, discrimination, and offensive and assaultive behaviors, and Defendant Tincher repeatedly assured Plaintiff that he was taking care of it.

132.  The representations and assurances made by Defendant Tincher to Plaintiff about ongoing corrective action related to past events and pre-existing facts, and led Plaintiff to believe that Defendants Tincher and Lockheed were actively engaged in disciplining or dismissing or otherwise correcting the behaviors to which she was subjected in the work place.

133.  At all times herein, Defendant Tincher was acting in the course and scope of his employment with Defendant Lockheed, and pursuant to his agency relationship with Lockheed, and also pursuant to his position as facility manager at the Beaufort Pilot Fit Facility.

134.  At multiple points after her complaints were raised, Defendant Tincher, and by association and agency relationship Defendant Lockheed, provided Plaintiff with assurances and representations that appropriate corrective measures were ongoing and were being taken such that she would be protected in her work place.

135.  These representations made by these Defendants Tincher and Lockheed to Plaintiff were false, and these Defendants knew them to be false at the time made because they never intended to break up this male dominated team at the Beaufort Pilot Fit Facility.

136.  Due to their close working relationships and contractual ties to this facility, each and all of these Defendants owed Plaintiff a duty of communicating truthful information to her at all times.

137.  These Defendants, Tincher and Lockheed, breached their duty of care owed to Plaintiff by making false promises and representations to her, and these

Defendants had pecuniary interests of their own to serve by making these false statements and representations to Plaintiff.

138.    Plaintiff had a right to rely on these promises and representations made by these Defendants, and Plaintiff did indeed rely upon the truth of same to her detriment.

139.    As a direct and proximate result of the negligent misrepresentations made to Plaintiff by Defendants Tincher and Lockheed, Plaintiff has suffered pecuniary losses and other damages.

140.    Due to the negligent misrepresentations set forth herein, Defendants Tincher and Lockheed are jointly and severally liable to Plaintiff for actual damages, for punitive damages, for pre judgment interest, for post judgment interest, for the costs of this action, for attorney fees, and for such other and further relief as this Court deems appropriate.

WHEREFORE, having raised her Amended Complaint herein, Plaintiff prays this Court inquire into the matters set forth herein and grant her judgment against each and all of the Defendants, Rockwell Collins, Inc.; Lockheed Martin Corp.; RFD Beaufort, Inc.; Lee Tincher; Brian Grealish; all jointly and severally or as otherwise indicated and set forth above, for actual and compensatory damages, for punitive damages, for pre judgment interest, for post judgment interest, for the costs of this action, for attorney fees, and for such other and further relief as this Court deems just and appropriate.

/s/ Patrick W. Carr
Patrick W. Carr, Esquire
SC Bar No. 15585; Fed. I.D. No. 07190
BERRY & CARR, P.C.
Attorneys at Law
2 Spanish Wells Road
Hilton Head Island, SC 29926
Phone: (843) 686-5432
Dated: June 13, 2018                        Facsimile: (843) 785-6173
                                            E-mail: patrick@hiltonheadlawyers.com
Hilton Head Island, South Carolina          *Attorneys for Plaintiff*